UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FRED E. STEPHENS, JR.,<br><br>                  Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                  Defendant. | NO: 12-CV-0160-TOR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment (ECF Nos. 17, 18). These matters were heard without oral argument on December 14, 2012. Plaintiff is represented by Paul L. Clark. Defendant is represented by Gerald J. Hill. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. There being no reason to delay a decision, the hearing set for April 21, 2014, is vacated and this matter is submitted without oral argument. For the reasons discussed below, the Court will grant Plaintiff's motion and deny Defendant's motion.

ORDER GRANTING SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 688 F.3d 1144, 1149 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or medically equal the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity

ORDER GRANTING SUMMARY JUDGMENT ~ 4

("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

ORDER GRANTING SUMMARY JUDGMENT ~ 5

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed applications for a period of disability, disability insurance, and Supplemental Security Income benefits on June 9, 2006, alleging disability beginning February 28, 2004 due to manic depressive disorder, lower back and left shoulder injuries, and confusion. Tr. 101-04, 234-42, 285. Plaintiff's claim was denied on February 24, 2009, following a hearing before an administrative law judge ("ALJ"). Tr. 108-24.

Plaintiff appealed the ALJ's decision to the Appeals Council, which granted his request for review. The Appeals Council subsequently vacated the decision and remanded the case to a different ALJ to further consider Plaintiff's maximum residual functional capacity and to obtain evidence from a vocational expert, if appropriate. Tr. 127-28. The Appeals Council further ordered the ALJ to address

new evidence which had been submitted with Plaintiff's request for review and to take any further action needed to complete the record. Tr. 128.

After conducting a second hearing on March 1, 2011, the ALJ found Plaintiff not disabled. Tr. 26-44. On January 27, 2012, the Appeals Council denied Plaintiff's request for review (Tr. 1), making the ALJ's decision the agency's final decision subject to review in this action. 20 C.F.R. § 404.2210; *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

## ISSUES

Plaintiff, Fred Stephens, seeks judicial review of the Commissioner's final decision denying him Title II period of disability and disability insurance benefits and Title XVI Supplemental Security Income. Plaintiff has raised five issues for review: (1) whether the ALJ erred at step three of the sequential evaluation process by disregarding objective medical evidence which, when considered in isolation, supported a finding that Plaintiff's back and shoulder impairments medically equal the impairments in Listings 1.02B and 1.04A; (2) whether the ALJ deprived Plaintiff of a fair hearing by limiting the scope of review on remand of a prior decision by the Appeals Council; (3) whether the ALJ properly evaluated the opinions of three treating physicians; (4) whether the ALJ properly evaluated the opinions of two non-medical sources; and (5) whether the ALJ properly evaluated Plaintiff's credibility.

DISCUSSION

**A. The ALJ Erred at Step Three by Discounting Objective Medical Evidence of Plaintiff's Impairments in Light of Other Non-Medical Evidence in the Record**

At step three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to determine whether they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R §§ 404.1520(d), 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The claimant bears the initial burden of proving that his or her impairments meet or equal a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-33 (1990). "To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Id.* (citing 20 C.F.R. § 404.1526) (emphasis in orginial). A determination of medical equivalence "must be based on medical evidence only." *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(d)(3)); *see also Bowser v. Comm'r of Soc. Sec.*, 121 Fed. App'x 231, 232 (9th Cir. 2005) ("Step three . . . directs the adjudicator to determine whether, in

light of the objective medical evidence, the claimant has a severe impairment or combination of impairments that meets or equals the criteria in the Listing of Impairments[.]"). If a claimant's impairments meet or medically equal a Listing, the claimant is "conclusively presumed to be disabled," and is entitled to an award of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995) ("Claimants are conclusively disabled if their condition either meets or equals a listed impairment.") (emphasis omitted).

Here, Plaintiff argues that the ALJ erred at step three by finding that his impairments did not medically equal the impairments in Listings 1.02B and 1.04A. Specifically, Plaintiff contends that the ALJ improperly accepted testimony by medical expert Dr. Arthur Lorber that Plaintiff's impairments would equal these listings *only* if the objective medical evidence were considered in isolation—*i.e.*, without regard to Plaintiff's "activity level." Tr. 32. According to Plaintiff, the fact that the objective medical evidence supported a medical equivalency determination should have precluded any further inquiry into non-medical evidence as a matter of law. ECF No. 17-1 at 5-8; ECF No.20 at 2-3.

At the January 2009 hearing, Dr. Lorber, a board certified orthopedic surgeon since 1973, testified that Plaintiff's impairments medically equaled the impairments in Listings 1.02B and 1.04A based upon the objective medical evidence in the record. Specifically, Dr. Lorber opined that an MRI of Plaintiff's

lumbar spine taken in January 2007 revealed "very significant abnormalities." Tr. 86. In Dr. Lorber's opinion, those abnormalities, when considered in conjunction with the results of a neurosurgical consultation performed by Dr. William Bronson in February 2007, warranted a finding that Plaintiff's impairments were medically equivalent to those in Listing 1.04A. Tr. 86. Dr. Lorber further testified that an MRI of Plaintiff's left shoulder taken in July 2008 revealed "degenerative changes and a possible impingement of the . . . supraspinatus," a diminishment of the disc between the head of the humerus and the acromion, and "degenerative changes at the [glenohumeral] joint." Tr. 87 (citing Exhibit 25F). According to Dr. Lorber, these limitations were medically equivalent to Listing 1.02B. Tr. 87.

Dr. Lorber's opinions as to medical equivalency, however, were subject to one major caveat—that Plaintiff did not appear to be as limited in his work activities as the MRIs of his lumbar spine and shoulder seemed to suggest. In Dr. Lorber's view, the medical evidence supported a medical equivalency finding *only* when considered in isolation and without regard to Plaintiff's work activities:

> Now if we just looked at that MRI and nothing else[,] the claimant would [meet Listing 1.04A]. And when we factor in Dr. Bronson[,] he would be more like an equal but there wasn't a whole lot of evidence of focal neurologic deficit. Now there are some, however, irregularities in [Plaintiff's] activities which are not consistent with the findings on the MRI. For example, there's the fact that he worked doing cement foundation work in April of '06. And then in . . . September '07 he was seen by nurse practitioner Schwartzman and stated that he [had] just returned from a mission to Mexico where he had worked stapling insulation with a staple gun. And now he

ORDER GRANTING SUMMARY JUDGMENT ~ 10

1     complained of left shoulder pain because he had to hold the insulation
      up with his left arm while he stapled it into the framing with his right
2     arm or hand.

3                         *     *     *     *     *

4     So I think if we don't look at his activities, and I don't know how you
      can avoid looking at his activities, but if you don't look at his
5     activities he would be an equals by combination of [Listings] 1.02B
      and 1.04A as of August of '06 and not any earlier.  And it's up to [the
6     ALJ] to determine, I suppose, to what affect [sic] his activity level
      should be considered as it affects his impairment or his ability to
7     qualify for Social Security.

8  Tr. 86-87.  Dr. Lorber subsequently reiterated the inconsistencies between the

9  medical evidence and Plaintiff's activities on cross-examination:

10    I certainly admit and pointed out that this man has very severe
      abnormalities on MRI findings.  However, one has to look at clinical
11    correlation.  That the man, if you'll excuse the expression, walked the
      talk.  Here he is going out to Mexico to work in construction.  That is
12    not compatible, in my opinion, with severe back pain.

13  Tr. 88.

14     The ALJ ultimately accepted Dr. Lorber's testimony, finding that Plaintiff's

15  impairments did not meet or medically equal Listings 1.02B or 1.04A.  In her order

16  denying benefits, the ALJ explained:

17    Although Dr. Lorber testified that the lumbar MRI and left shoulder x-
      ray [sic] appeared to indicate the claimant met or medically equaled a
18    listing of impairment, he gave his medical opinion with reservation

19

20

ORDER GRANTING SUMMARY JUDGMENT ~ 11

and with the caveat that other medical findings[1] and the claimant's reported activities did not support such. The undersigned agrees that other examinations in the record do not support the claimant meeting or medically equaling the listing and the claimant's reported activities are inconsistent with his pain complaints and some medical findings. Such inconsistent activities include the claimant working at the substantial gainful activity level for over 8 months during the relevant time period . . . and the fact the claimant moved to Idaho and the repeated notations that the claimant was performing construction type work for his brother, mother and church.

Tr. 32.

Having carefully reviewed the record, the Court concludes that the ALJ erred in weighing Plaintiff's physical activities against the objective medical evidence for four reasons. First, a determination of medical equivalence at step three of the sequential evaluation process "must be based on medical evidence only." *Lewis*, 236 F.3d at 514 (citing 20 C.F.R. § 404.1529(d)(3)). The administrative regulations allow an ALJ to "consider all evidence in [the] case record about [the claimant's] impairment(s) and its effects on [the claimant] that is relevant to [a finding of medical equivalency]." 20 C.F.R. §§ 404.1526(c),

---

[1] The statement that Dr. Lorber relied in part on "other medical findings" in qualifying his opinions as to medical equivalency is not supported by the record. The transcript of Dr. Lorber's testimony reveals that his qualifications were based exclusively upon Plaintiff's "activity level," and, to a lesser degree, Plaintiff's "history of polysubstance abuse." Tr. 86-88.

ORDER GRANTING SUMMARY JUDGMENT ~ 12

416.926(c).  To that end, an ALJ must "consider[] whether [the claimant's] symptoms, signs and laboratory findings are medically equal to the symptoms, signs and laboratory findings of a listed impairment [by looking] to see whether [the claimant's] symptoms, signs and laboratory findings are at least equal in severity to the listed criteria."  20 C.F.R. §§ 404.1529(d)(3), 416.929(d)(3).  Contrary to Defendant's assertions, these regulations leave no room for an ALJ to question whether the claimant's "symptoms, signs and laboratory findings" are legitimate in light of other non-medical evidence in the record.  Just as a claimant may not "substitute . . . allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [an] impairment," 20 C.F.R. §§ 404.1529(d)(3), 416.929(d)(3), an ALJ may not discredit objective medical evidence in order to *reduce* the severity of a claimant's impairment at step three.

Second, even assuming that non-medical evidence could potentially be considered at step three, there is no basis for considering non-medical evidence in conjunction with the particular listings at issue in this case.  As Plaintiff correctly notes, Listings 1.02B and 1.04A consist entirely of objective medical findings.  Listing 1.02B, which governs major dysfunction of a joint, consists of

> [a] gross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of

ORDER GRANTING SUMMARY JUDGMENT ~ 13

>joint space narrowing, bony destruction, or ankylosis of the affected joint(s) [in conjunction with] [i]nvolvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, Appendix 1, 1.02B.  Listing 1.04A, which applies to spinal disorders, requires

>[a] [d]isorder[] of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord [in conjunction with] [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, 1.04A.  Thus, in determining whether a claimant's impairments equals one of these listings, an ALJ must limit his or her analysis to the *medical* findings (or lack thereof) in the record.  Dr. Lorber recognized this fact, qualified his opinion accordingly, and left it up to the ALJ to determine the legal significance of the non-medical "activity level" evidence.  Tr. 87 ("[I]t's up to [the ALJ] to determine, I suppose, to what [extent] his activity level should be considered as it affects his impairment or his ability to qualify for Social Security.").

Third, assuming *arguendo* that non-medical evidence is relevant to the particular listings at issue, the ALJ's findings in this regard are not supported by

ORDER GRANTING SUMMARY JUDGMENT ~ 14

substantial evidence.  As an initial matter, the ALJ erred in implicitly accepting Dr. Lorber's opinion that the January 2007 MRI of Plaintiff's lumbar spine was inconsistent with Plaintiff's "admission [to] doing cement foundation work in April 2006." Tr. 32.  Because the MRI was taken *after* Plaintiff performed the cement foundation work, there is no basis for concluding that it was "inconsistent" with Plaintiff's activity level.  For similar reasons, the ALJ had no basis for discounting this evidence (or the July 2008 MRI of Plaintiff's left shoulder) based upon work that Plaintiff performed for the Boardman Parks and Recreation District from April 2005 to January 2006.  *See* Tr. 32, 231-33.  Although these activities are relevant in the sense that they occurred after the alleged onset date of Plaintiff's disability (February 28, 2004), the ALJ should not have cited them as a basis for rejecting subsequently-obtained medical evidence.

     Furthermore, there is clear evidence that Plaintiff's work activities actually exacerbated his back and shoulder problems.  For example, the ALJ found that (1) Plaintiff "noted an increase in back symptoms since April 2006 after performing cement foundation work with his brother" (Tr. 30); (2) "[Plaintiff's] first treatment for shoulder pain complaints was in April 2006 after [he] reported putting up sheet rock at his mother's home" (Tr. 30); and (3) "Following his return from a church mission to Mexico where he spent time stapling insulation, [Plaintiff] returned with complaints of left shoulder pain" (Tr. 31).  These findings are difficult to reconcile

with the ALJ's conclusion that Plaintiff's impairments were not as serious as the medical evidence indicated. Indeed, these findings tend to support the opposite conclusion.

Finally, the ALJ should not have penalized Plaintiff for attempting (unsuccessfully) to overcome his impairments to earn a living. As noted above, Plaintiff's brief forays into construction-related work typically exacerbated his spinal and shoulder impairments and caused him to quit working. Thus, the ALJ should not have cited this activity as evidence that Plaintiff had embellished his subjective complaints of pain. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007) (holding that brief, unsuccessful attempts to work are not inconsistent with disability); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

In sum, the ALJ erred as a matter of law by disregarding medical evidence which demonstrated that Plaintiff's impairments equaled the impairments in Listings 1.02B and 1.04A. At step three, the ALJ was required to make a medical equivalency finding based upon objective medical evidence only. She was not permitted to discount such evidence in light of other non-medical evidence in the record, particularly where the Listings at issue call for a comparison of objective

medical findings.  Moreover, even if non-medical evidence could be properly considered, the ALJ's findings concerning Plaintiff's "activity levels" are not supported by substantial evidence.

> When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.  We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.

*Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (citations and internal quotation marks omitted); *see also Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits."); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (reversing and remanding for an award of benefits where "a finding of disability is clearly required" and "[the claimant] has already waited over seven years ... and additional proceedings would only delay her receipt of benefits").  Accordingly, the Court will remand this case to the Commissioner for a calculation of benefits based upon a disability onset date of August 8, 2006.[2]

//

---

[2] This is the disability onset date recommended by the medical expert, Dr. Lorber, which the Court finds to be supported by substantial evidence and for which there is no other objective evidence to support a different date.

ORDER GRANTING SUMMARY JUDGMENT ~ 17

### B. Plaintiff's Remaining Contentions

Given that this case is being remanded for a calculation of benefits, the Court need not address Plaintiff's remaining arguments.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 17) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (ECF No. 18) is **DENIED**.

3. This case is **REVERSED** and **REMANDED** to the Commissioner for calculation of benefits consistent with this Order pursuant to the fourth sentence of 42 U.S.C. § 405(g).

4. Plaintiff may file an application for attorney's fees and costs by separate motion.

The District Court Executive is hereby directed to file this Order, enter Judgment for Plaintiff, provide copies to counsel, and **CLOSE** this file.

**DATED** this 14th day of December, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge